Our second case of this morning, number 20-3463 Manivannan v. US Dept of Energy, professors Powell and McHale. Take your time setting up. Whenever you're ready. You can take your mask off. Good morning, your honors, and may it please the court. My name is John Powell for appellant, Dr. Iaconu Manivannan. How do you say the gentleman's name? It's Iaconu Manivannan. Manivannan. Manivannan, okay, thank you. Dr. Manivannan actually goes by Manny almost all the time, so if I slip and call him Manny, that's what he goes by. So I'd like to reserve three minutes for rebuttal, if I can. That's fine. Thanks. This case presents what is actually a simple question. Can a federal agency commit torts and violate the Privacy Act of 1974 with impunity just because the victim of their conduct is an employee of the agency? My first question, I think we've got to attack the jurisdictional issues here. Yeah. Did the magistrate judge err in dismissing Mr. Manivannan's Privacy Act and Federal Tort Claims Act claims for lack of federal jurisdiction? So if you could address that first, because that's a big issue. Sure. So the district court dismissed the claims as being precluded by the CSRA, saying that essentially because the CSRA regulates employment at federal agencies, Dr. Manivannan cannot bring a Privacy Act claim or an FTCA claim any time, or no federal employee could bring one of those claims, any time the claim only arose as a result of their employment at the agency. In other words, if they hadn't been employed at the agency, this claim never would have arisen. Well, that isn't – I think they went out of their way to say they weren't framing it that way. They were trying to frame it along the lines of you, trying to frame it along the lines of Cerullo, and that if these things arose from – if it's arising from the employment relationship, then the Civil Service Reform Act very deliberately channels those claims into the Merit Systems Protection Board and then to the federal circuit. Now, let's assume for the sake of argument that that's what we thought the argument was. What is wrong with that argument? How is it – if we accepted that that is the framing, do you acknowledge that, yeah, it doesn't matter what other claims you've got, if they're arising from the employment relationship, then that complaint belongs in the Merit System Protection Board system? Thank you, Your Honor. First, that would preclude – the preclusion that that would result in would be much too broad. So, for example, if that were really the test, this court would never have exercised jurisdiction in a case like Queen v. Stone, where someone was alleging that they had a dispute with someone at work, and that resulted in their – We don't know that anybody ever raised the preclusion issue in that case, right? I mean, there are certainly going to be instances where no party raises an argument, and so you just go past it. The court doesn't address it. Your Honor, the other problem with that is that basically, like, there is no relief in the MSPB for a Privacy Act claim. I don't think it's really disputed in this case that the MSPB cannot exercise jurisdiction over Privacy Act claims, and it also cannot exercise jurisdiction over FTCA claims. So if the ruling is that broad, then you're essentially denying every federal employee the right to any protection of the Privacy Act, and you're also telling federal agencies that although they are very restricted in what they can do with all of their records that they collect about people, there's a huge exception to that, and that they can do whatever they want with any records that they collect about their employees. Are you saying that to them, or are we saying what the Supreme Court said in the Bush case, which is, look, you may not be able to get relief there, but you develop your factual record, and you get that in front of the federal circuit, and then you let them take care of it when you get there? That's still the system. I think there's an important distinction with Bush, Your Honor, because Bush was dealing with Bivens claims, and that's a huge distinction in this case. We're dealing with statutory claims. So Congress went out of its way in 1974 to say, you know, everyone can sue a federal agency for this, but it's different in Bush where a Bivens claim is a judicially created remedy. So the principles of judicial restraint suggest that if Congress has come into an area and decided to regulate it, why would a judge be creating a new remedy in that area? However, when Congress has created its own. Why does that argument work just as well against you? If Congress has created an elaborate Civil Service Reform Act system for addressing employee complaints, a system which, in fact, your client used and made many, many of the same. I mean, he's framed the claim differently legally, but these are all flowing from the same set of facts that he argued about in his claim before the Merit System Protection Board. Why wouldn't the very same argument you're making, which is Congress has set the bounds here, prompt us to say, yeah, Congress has set the bounds here, and you're supposed to go to the Merit System Protection Board, and he did, and he lost, and that's pretty much the end of it. But if Congress has created the FCTA, FTCA, and if Congress has created the Privacy Act prior to CSRA, why should federal employees not be entitled to relief from these other congressfully created acts just because of their federal employment? That's right, Your Honor. In this case, the facts are very different than all the other cases that we've talked about so far. Here, a federal agency employee, Mr. Mark Hunsaker, and this is completely different from what was alleged in the MSPB case. The MSPB case did not – Let's talk about the internal investigation. Okay. Why is that not a fit within the CSRA? Well, yeah, actually, as the MSPB judge in this case ruled early on, and as other cases show, the conducting of an investigation, here it's called the MDI, is not an adverse personnel action against someone. And the reason it's not is because, in theory, when somebody hires someone to come in and do an investigation, they're supposed to be an objective third party who's just coming in to decide whether or not an adverse personnel action has to be taken. But didn't the investigation result in a significant change in working conditions? It did not, Your Honor. It did not? No, nothing that happened in the investigation. Because the person is conducting – He was on administrative leave? He was eventually removed? That's right. So administrative leave, as long as it's under pay, is not considered an adverse personnel action or a significant change in his working conditions. So that's not something that you could take to the MSPB. He resigns because he says, as I understand it, as I read it, he resigns effectively under protest because of the outcome of the investigation. And then he engages in litigation, multiple kinds of litigation, including an MSPB complaint. So clearly he thought – He thinks so. He had an adverse outcome. Well, but, Your Honor, not – I mean, that's not the adverse outcome that we're claiming here. Well, you certainly thought it was a significant change in his working relationship. I mean, on leave and then terminated and taken out of the situation there, what is – it's almost a paradigm case for fitting within the CSRA, right? Your Honor, if he was challenging adverse personnel actions in this case, then you're right that he should go to the MSPB. But it's not an allowed adverse personnel action to blatantly violate the Privacy Act. All right. You can tell me what fits within the CSRA and what doesn't, gently speaking. Okay, Your Honor. So we would say that CSRA – we don't deny that CSRA precludes some claims from coming into district court. It precludes claims from coming into district court if it arises out of or is based on something that is an adverse personnel action or is a prohibited personnel practice. So, for example, Dr. Manny Vanden did have whistleblower claims. He alleged that his supervisor – his former supervisor, Dr. Gemmon, that he made a disclosure to him in 2011 and that Dr. Gemmon transferred him immediately thereafter. Actually, the disclosure was 2010, and he transferred him in 2011. He made another disclosure to him in 2014, and he transferred him again. And he does allege in that that these other things flowed from Dr. Gemmon, you know, from his disclosures to Dr. Gemmon. But that's not what we're alleging here. Here we're dealing with a Privacy Act violation. Take a step back. Okay. I ask you a general question. Okay. What fits within the CSRA? What doesn't fit? So a claim challenging a personnel action, if someone were to – okay, so, for example, here, after they conduct this investigation – I'm asking you – just forget this case for the moment. What fits within the CSRA? What doesn't? Within the CSRA are personnel actions and prohibited personnel practices. And if it's not that, it doesn't fit. This is not a personnel – now come back to this case. This is not a personnel action? The conduct of an MDI is not a personnel action because, again, it's not – they're not – they're just going to decide whether to do something against you or not. And most importantly, taking a bunch of records and handing them out – It was investigated for what? He was being investigated because a former intern alleged that he had harassed her. Those claims – Very serious sexual harassment claims. Which he has been acquitted – I mean, many of those claims the jury acquitted him of, and the rest of those claims have been vacated. Many acquitted him of. Just take it as a given that the fact that he's acquitted on the stalking claim – Right. Convicted on everything else. But only – Which is different from an acquittal, but leave that aside. That it still stands that he was found by this investigation to have done those things that constitute improper conduct, abusive position, et cetera, and that all of that is in the record and it's sort of a given, that that's in the record. Whether he did those things or not – I mean, that's to decide, and I understand you guys – I fully understand that you reject that, but it's a matter of historical record. The MSPB found that he was properly removed, so to speak, based on those allegations. Would you agree with that? I wouldn't agree that the MSPB actually found that he did those things,  I didn't say that. I think what they held was that he failed to show that his disclosure caused Dr. Gemmon to cause his removal. Okay. So you've got then a circumstance where he, as your opponents put it, it looks like he's trying to have it both ways. He characterizes all of this as a workplace vendetta. They're out to get him. They took him off of a paper that he was properly an author of, and everything that follows is this workplace vendetta, and they're doing bad things to him, including initiating the investigation, and that the investigation results in false accusations, and he's entitled to get back in because of that. How is this different from Cerullo, where the postal employee says, look, I'm entitled to make these claims, and the court simply says, yeah, no, you're not, because these are claims arising from your employment. There's not some independent basis in federal tort law that you get to invoke, because if you've got complaints of this sort that come out of your employment, a workplace vendetta, you resolve them in the CSRA system. If I may, so although he describes a workplace vendetta in an OS, a pro se OSC thing that he filed before the MSPB, but since he has had counsel, he has never said, and he's never said anywhere that Mark Huntsecker was aware of the disclosures against him or that the conduct that Mark Huntsecker did when he took all these records and handed them over essentially illegally to state prosecutors, that that was motivated by Dr. Gemmon. I think that that's a separate thing. Let's go back to the internal investigation. I thought Mr. McFadden challenged the internal investigation as a, quote, personnel action, close quote, in the MSPB proceedings. Your Honor, he challenged the initiation. He did challenge it as a personnel action, right? No, he challenged the initiation of the investigation as a personnel action, and there's some law that says that it is, and the MSPB judge thought that it is, but the conduct of it is not. It is what it is because it is, he says, a personnel action. The initiation of it is a personnel action, but the conduct of it is not. That's what the law says on this. I know that sounds strange. How do you place that baloney? Well, it's because, I mean, if someone, I mean, it's not actually an adverse personnel action, but they have found that you can make a whistleblower claim for a retaliatory investigation if someone who you've offended at work goes out of their way to start an investigation. But once an investigation is started, it's supposed to be an objective thing where they're just determining whether or not, you know, you actually did something. I thought he was claiming that the investigation was negligently performed. Is that correct? Yes, Your Honor. Yes, it was. And it resulted in his being removed. And you're kind of saying that's not even a significant change in working condition? No, Your Honor. What we're saying is, I'm not saying that that, that his removal is not a significant change. I'm saying that another thing that happened because of this negligent investigation and this privacy violation is that he was prosecuted for a bunch of computer counts in Center County and then was wrongly convicted of them, and that as soon as the district attorney there changed, the old district attorney was suspended from the practice of law, and the new district attorney said, we're going to bring these counts and dismiss them with prejudice. He would never have been prosecuted for the computer counts in the, for some of the claims in the state law case if there hadn't been this bogus investigation, which then got handed over to the state law, state prosecutors. Let's go to the document that. You're going to stay up here as long as you can. I'm happy to stay here. The document getting, noting his separation was an SF-50 form, right? No, there are different things, Your Honor. What about, what claim did you make based on a proportionately inaccurate SF-50 document? Yes, Your Honor. So after he resigned, they issued an SF-50 form, which is a record of a personnel action. It's not itself a personnel action, but it's a record of one. And in that form, they said that the agency had made a finding that he had conducted, that he had engaged in misconduct. And that's actually, that's not true. It's procedurally inaccurate because. What was he challenging as a result of the claimed inaccuracy of the SF-50 form? Well, it makes it impossible for him to get another job at a federal agency. The counts two and five that make the, that deal with that? Say again? The counts two and five of the complaint deal with that, is that correct? That's right, Your Honor, yes. So what was he challenging? He was challenging the fact that they have a record that says that the agency made a finding when they didn't make a finding. We're not challenging, you know, the contents of that finding, but it's inaccurate to say that the agency made a finding of wrongdoing against him before he resigned. That didn't happen. In, you know, the CSRA. So in the end, he's not challenging the disciplinary and corrective action? Absolutely not, no. Absolutely not. Yes, only we just want them to change that form, yes. Absolutely not. Absolutely not. So what are counts two and five? Why are they even in here? Because it makes it impossible for him to get another job at a federal agency when they have a record. Because when you go to try to get a new job at a federal agency, they look at your SF-50, and if the SF-50 says the old agency made a finding of misconduct against me and that's not true, that's preventing him from getting another job.  I do have, if you'll indulge me. Go ahead. Let's assume for the, let's shift back to your earlier argument, which is if you confine Mr. Manivan into the CSRA system, he'll be without a remedy for some significant wrongs. That's right. The judge, before he was Chief Justice Roberts, seemed to say kind of a so what to that in the Fornaro case, where he said as far as determinations under the CSRA is concerned, what you get is what you get. In other words, you sign on for federal employment, and you may not get all the relief that other people get. You get a certain system, and that's what you get. Your Honor, if I could make just two quick points. So, first, courts across the country have exercised jurisdiction over claims just like this one. I would point you to the Covert case, but also to Quinn, also to Spade, also to Minshew, Hallis, Brunot, Dopey, Begrose. I mean, there are many cases where this gets addressed, and what you get is what you get. I agree with that. I don't dispute. Do any of them say, yeah, we've looked at this, and we're paying attention to what the CSRA is. Yes. There's been a preemption argument. Yes, Your Honor. Some of them do. I believe Covert has that analysis. How do you deal with the Mangano case out of the Ninth Circuit, where they said that the possibility that you might be left without a remedy doesn't matter? Your Honor, I don't dispute what you get is what you get. But the problem here is this is not what you get under the CSRA, because the CSRA does not claim to govern Privacy Act violations. So it's not like we're in the rubric of the CSRA. When you're thinking about CSRA preclusion, you have to think about what you get is what you get. To me, it means if you can bring a claim, if the MSP has jurisdiction over it but can't afford you relief, then too bad. And I agree with that. But if the MSP doesn't have jurisdiction over it, why are we leaving these wrongs unrighted and depriving jurisdiction that Congress granted to the district courts? Let's hear from the opposing counsel. Mr. McCann. Good morning, Your Honors. Members, may it please the Court, Matthew McHale on behalf of the Pele's United States Department of Energy and the United States. It's a pleasure to be here in person, also, in a courtroom, so thank you. I would like to start, actually, by focusing on Dr. Manny Mannon's allegations in this case, because I think they do show that what he is challenging here is essentially personnel actions, prohibited personnel practices, that are found in also the proceeding that he took up through the MSPB. Tell me if I'm correct or incorrect. There's three sort of general areas. We've got the internal investigation and what comes out of that, the cooperation with the state prosecutor in giving them information, and then also the claim for failure to return personal property. Is that correct? Yeah, that's one way to look at it. So what I would say is those are linked in Dr. Mannon's own words. For example, when he says, quote, NETL supported my conviction and ultimate imprisonment to justify removal. So he says that. Is there anything else? I mean, in terms of the various grouping of the accounts, and it may be linked in some way, obviously, because he was investigated, he was terminated, ultimately turned over to the state authorities. There was a trial, partial acquittal, partial conviction, overturned on appeal, et cetera. So there is a link, no doubt. But is there anything? Am I misstating the general areas here? I mean, I don't know that I would. So, I mean, they all fall under the context of a workplace vendetta, I guess. The way he lays it out in the complaint, he starts by going. Well, they don't all fall. I mean, you heard Mr. Powell say that Mr. Hunsicker's behavior was, there's no indication that Mr. Hunsicker was in on some vendetta, but he's wholesale taking records that are protected and handing them over to state authorities when, arguably, they shouldn't be handed over to state authorities. They should be protected. That's not a workplace vendetta. That's a government employee going off the rails and violating Mr. Mayvanen's right to privacy, according to the allegations of the complaint. How is that covered by the Civil Service Reform Act and part of a workplace vendetta? Well, he has alleged that the investigation, which he did challenge as a retaliatory personnel practice, was done in order to assemble documents to give to the prosecutors. I don't hear him disagreeing that the MDI was ill-motivated and part of a vendetta.  What I hear him saying, what I want you to respond to, is his assertion that that has nothing to do in a legal sense with what Hunsicker did, that this is not but-for causation that we're talking about. We're talking about an independent wrong that Hunsicker undertook and that he should have some right and a remedy for. That's what I'm asking you to respond to. Well, I guess I would start by looking at the text of the Civil Service Reform Act, which is very broad. It's not to be interpreted in a cramped way. In the text of the Civil Service Reform Act, when it lays out the merit system principles that Congress wanted to protect, it specifically says that all employees should receive fair and equitable treatment in all aspects of personnel management with proper regard for their privacy and constitutional rights. So privacy, first of all. But hunting or turning over the documents, how is that a, quote, personnel action, close quote, under the CSRA? Well, if it's in furtherance of the attempt to remove Dr. Manny Vannon, which is what Dr. Manny Vannon has alleged. So Dr. Manny Vannon has said. What does turning the documents over to a police authority have to do with removing Dr. Manny Vannon? I would suggest that to take Dr. Manny Vannon at his word, which is this was part of a plot, which is his word, that the plot is specifically referring to cooperation between Mr. Hunziker and the prosecutor. So that's a plot that was part of a, quote, continued vendetta, and the further attempt to get him convicted in prison was part of his employer's intent to remove him. So, I mean, I can imagine hypothetical situations where. You don't claim that that's a personnel action. Is it the turning over of documents to the DA's office there in Center County? Nobody's arguing that that was a, quote, personnel action, are they? I think it depends how, where you sort of place the lens. I'm asking you now. Are you claiming that Hunziker's action in turning over documents constitutes a personnel action within the meaning of the CSRA and the associated regulations? Because if that's what's being claimed, that strikes me as new. I mean, I don't know that you can necessarily slice it that fine because. . . Don't we have to slice it that fine? Because the argument being made to us is CSRA does protect people, and it protects people in the context of personnel actions, but it was never meant to disenfranchise federal workers from being able to take advantage of general statutory schemes that are supposed to protect everybody, like the Privacy Act and the Federal Tort Claims Act. That's the pitch that's being made to us. What's wrong with that? Why shouldn't we say, okay, things that are personnel actions, you've got to go to the MSPB, and if they're not personnel actions and there's a wrong, there's a remedy. Congress has enacted it, and the government has waived its sovereign immunity with respect to those things. It's got to face the music. That's the pitch being made. You've got to take that on. Because courts have taken a much broader approach than just looking at. . . For example, in Cerullo. So Cerullo addressed the argument whether an allegedly improper recording of an employee was preempted. And I think the argument. . . I'm going to sort of analogize it. I think the argument there was sort of similar in that, well, we know the Supreme Court has said that. . . Wasn't Cerullo like a Bivens case? It was, yes. Yeah, and Bivens is just created law as opposed to congressionally created remedies for certain actions. Agreed. So two things. Number one, as I said, privacy itself is specifically included as a merit system principle that is protected under the CSRA. Yeah, they say that, but do you think by saying the word privacy in the CSRA, that indicates a congressional intent that the Privacy Act doesn't apply to federal employees? I would not state it so broadly, no. But where we have multiple examples of Privacy Act claims being preempted, not only in you but also in Kleiman and Orsay, other cases we've cited. So I don't. . . In Cerullo itself, there were discrimination claims and retaliation claims that were treated on the merits, right? I believe that's right, yes. Okay. Under your reasoning, shouldn't Cerullo have said those things are out too, preempted? Well, I would say. . . So discrimination claims are a little bit different and actually I would argue support our position in that, as the Supreme Court said in Elgin, discrimination claims are a specific carve-out of the CSRA which sort of proceed along what's called like a mixed case or something where Congress has allowed for that kind of claim, Title VII. . . They've also allowed for Privacy Act claims and for FCTA claims. Well, so the CSRA does not carve out claims brought under the Privacy Act statute, although, as I said, it does protect privacy as an interest that is to be protected under merit system principles. So, I mean, to get back to your question, Judge Jordan, about whether the actual handing over of material itself was a personnel action, I don't think the CSRA requires you to take such a sort of a, not myopic, but sort of a close-in view because if you slice it that finely, you can separate out any sort of subcomponent of a personnel action that's happening. And that's why I brought up Cerullo to say that there the court talked about a recording perhaps being something that might in other circumstances be independent and independently actionable, but because it comes out of, you know, the court's view, a common sense reading of the CSRA and it relates to disputes, grievances, that sort of center on the person's employment, it gets preempted by the CSRA. What does the government's refusal to let Mr. Manavanan have back his personal objects which he had left in his office? I look at that in the context of, again, a workplace vendetta. That's a conversion claim you made, right? Yeah. It is. Now, I would acknowledge that. It had nothing to do with the personnel action against him. Well, to me, well, so I would say two things. Number one, I think you actually did have an analogous situation. Okay, but we're not bound by you. Correct, Your Honor, yes. So there you had an employee who claimed an entitlement to certain property. Now, ultimately, you know, the government and his employer disputed that, but he was saying, I want this property back, even though he had been fired by then. I think here it would be anomalous to have. So how does that conversion claim fit within the context of what the CSRA wants to cover? I mean, he has alleged that, you know, his employers were out to get him for years. Nobody's denying that. What we're trying to get at is, what do you do for an employee? We're going to have to write a decision here, right? Mr. McHale, if we write a decision that says, yeah, this all comes out of a workplace vendetta, so it's all done, you're done, does that really put employees in a position where the government can say, leave, leave right now, and all this personal stuff of yours that happened to be in your office that you worked in for the last 20 years, you're never seeing it again, see you sucker. I mean, and you don't have any right to come back to us. There's no, it's not, there's nothing you can do about that. You're just done. How do we write a decision that leaves that door open? I mean, that seems to me connected to his alleged, you know, forced resignation, although the MSP found that it was a voluntary resignation. I mean, if supervisors slam. Assume it's that. Is it really the case, is it the government's position that once we fire you, we can just keep your stuff? It doesn't matter. No, that is not, I would not put it that way. If that's not your position, what is your position? Because what you're saying is, we can keep his stuff and he's got no claim in this instance because it's all part of a workplace vendetta. Let me ask, just to add on to that, ask it another way. What category of personnel action does the refusal to return personal property fit? I think it would be connected to an alleged improper removal. I mean, if supervisors. He's already gone. I'm sorry. He's already gone. Right, but cases like Cerullo and you don't draw such an absolute hard and fast line. And it would not be a workable line that. Well, why wouldn't it be a workable line? I think. What protection do you have if you're a government employee? Well, so the CSRA, briefly to go back to broad principles, is supposed to be comprehensive. And so I think that if you had an employee who gets fired improperly, his supervisor, they slam the door on him. They say, see you later. We're kicking you off the property. Don't come back. And then he brings a claim under the CSRA. And they kept his property. Let's say he left a stapler in his office that belonged to him. Well, why don't you make it something a little more meaningful than a stapler? And why don't you also assume that they fired him improperly? Sure, absolutely. Or they fired him. Doesn't matter whether they fire him properly or improperly. So an employee is entitled to quite a broad range of remedies under the CSRA, including consequential damages, if they're reasonable and foreseeable, and compensatory damages, which is similar to what Dr. Manny Vanden Heer is seeking $600-some-thousand in that conversion claim for the value of the property that he alleged he took, which, I mean, by the way, we deny. Yeah, I understand. But what you're saying is he's not without a remedy under the CSRA. Correct. The FTCA doesn't need to come in because he's got a remedy available. Correct. And I would add on, however, that doesn't have to be the case for the CSRA to apply, because as you were saying earlier to opposing counsel, sometimes what you get is what you get. But I think the CSRA does have very broad remedies under Section 1214. What's the protection? Is there any protection analogous to the Privacy Act, or is the government free to just use and abuse the privacy of its employees because they're bound by the CSRA and the Privacy Act doesn't apply? Done. There is protection, certainly for privacy interests under the CSRA, because where Congress has said that we want to – we expect personnel decisions will be made with regard for an employee's privacy rights and constitutional rights, and then if an employee suffers a personnel action like significant change in duties, and then the employee can bring a claim that the supervisor took a personnel action that violates any law, rule, or regulation implementing or directing. That's where the rabbit's going in the hat, Mr. McHale, because the assertion is Hunsicker's action was not a personnel action, and I don't even hear you saying it was a personnel action. You're studiously avoiding saying that was a personnel action. So that's the argument. CSRA covers personnel actions. This is a violation that doesn't fit that bucket, and maybe the answer is you get what you get, and so there isn't a remedy for that. But if that's the case, go ahead and say so. Well, the violation of the alleged disclosure to the prosecutors was one part of a campaign to remove him. So I don't think that you can separate that out when— So you really are making a butt fork. I told him to back off that one. The ALJ, the administrative judge, said he did not, quote, did not deem the agency's cooperation with the prosecutor's office a personnel action, close quote. True, and I would add that that was not appealed to the Federal Circuit by Dr. Mann, which presumably he could have done if he had viewed that was an error that needed to be corrected. It certainly suggests that the ALJ did not think he had jurisdiction. I don't know what he thought, but even if he did not have jurisdiction over a claim like that brought by Dr. Manny Bannon, that is not— I mean, as the Supreme Court said in Elgin, you can—the MSPB can develop a factual record on a, let's say, as in that case, a claim that constitutional rights were being violated. So if he makes this statement, what weight should we give it? It should be accorded significant weight because if nothing else, it shows that Dr. Manny Bannon was complaining of the— I mean, it's a question of law. It was not reviewed by the Federal Circuit, and it was still brought up— I mean, I recognize that the briefs in the Federal Circuit are not in the record in this case, but the disclosure of records from the agency to the prosecutor were also a section in Dr. Manny Bannon's brief to the Federal Circuit. What's the government's position here? The ALJ said it's not a personnel action. You seem to be saying it is a personnel action, and it's a personnel action because everything that flows from the original dispute with Dr. Gammon is a personnel action because it's all part of the vendetta. Am I hearing you right? As Dr. Manny Bannon has alleged in this case— I'm not interested in what you say he said. I'm asking for the government's legal position because I might have misunderstood. I thought you were sort of distancing yourself in the briefing from the idea that there was an argument for but-for causation, that instead you were saying something a little more nuanced than that. But hearing you at the podium, it sounds like what you're saying is, no, it is but-for causation. There's nothing that happens after that initial dispute that's not, in effect, a personnel action covered by the Civil Service Reform Act. Am I hearing you wrong? I would not say that, and I would not say it's but-for. I would say that, as in Cerullo, the court takes a common-sense view of what the CSRA is meant to do. It's not meant to allow for backdoor attacks or collateral reviews of personnel actions, and where a complaint centers on the person's status as a federal employee, which this one does, it's preempted by the CSRA. So we would ask for affirmance. Before you sit down, I'll just ask you one last question. Did you move to dismiss Mr. Manny Vannon's Privacy Act claims under Rule 1286? We did not expressly move under 1286, although as a legal question the court can affirm on that ground as well. So you say you didn't move to dismiss the privacy? Did not, correct. So why shouldn't-that means we probably shouldn't be getting into the merits here, should we? We don't believe the court needs to know. Okay. Thank you. Thank you, Your Honor. Mr. Powell? Thank you, Your Honor. Just four things I'd like to quickly address, if I can. So the first is the MSPB was completely correct when it said it did not have jurisdiction over a Privacy Act claim. That's in the MSPB handbook. And for the Federal Circuit, the Federal Circuit has repeatedly ruled that Privacy Act cases have to go to the district court. So that's-Ray None is a good case for that. There's also another case in my brief called Martin. I think the big question here is whether this court should interpret CSRA exclusion broadly or narrowly. So is it broad, everything coming out of employment, or is it more narrow, it's adverse personnel actions and prohibited personnel practices? If this court-we really think this court should use- It's like both of you are going for-it's either going to be a home run or a strikeout. Well, I mean, I would take any-I would take anything. But I just want to say if you hold that CSRA preclusion is governed by the definition of a personnel action and a prohibited personnel practice, you will be in good company because that's what-that's how the court approached it in Kleiman in the D.C. District Court. There's actually a Supreme Court case called Whitman v. The Department of Transportation where it uses that same rubric. There's also a Supreme Court case called Bush v. Lucas where the court said, quote, in denying the First Amendment Bivens claim, you can't have it because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions. That's right, Your Honor. But that case is dealing with the Bivens claim, which is a judicially created remedy. I know you've said that, but why does it matter if you've got-I mean, the Constitution isn't judicially created. You're vindicating a right that people have. Right, but I think that it's like when Congress has gone into an area to regulate it and give them the rights that they think that they should have, the courts want to be more careful. Whereas here, if you want to follow judicial restraint, you should actually not hold these claims to be precluded because doing so means you're invalidating something that Congress says Dr. Manny Bannon has under the Privacy Act. What do you think would happen if we said that this internal investigation ultimately resulting in a termination is not within the CSRA? How long do you think that decision would last before the Supreme Court? Well, Your Honor, the court in SysTac also held that investigations are not personnel actions. You can't challenge. When we were in the MSCB, we couldn't challenge what Marissa Williams was doing in the investigation because, as I said, it's not a personnel action. That is under the law. SysTac is the case we cite for it. But this resulted in what? Resulted in- This resulted in what? Well, it resulted in his termination, but we're not making a claim for damages from his termination. We're making a claim that it also resulted because that was taken and given to state prosecutors. So you're saying, in effect, his resignation was, in effect, the termination, is that correct? Well, there was a notice of proposed termination, and then he resigned before it ended. But we're not making a claim for damages stemming from any of that. We're not saying- and we're also not saying that, you know, the claims we're making here were part of a vendetta. Like, the privacy act disclosures were Mark Hunsaker, and the conversion was Mark Hunsaker. He seemed to say that. He seemed to say on numerous occasions that all the bad things that happened to him because he was being treated badly by his supervisors, and that they wanted to get rid of him, and that, in fact, the cooperation with the Center County DA's office was part and parcel of that. There's numerous places- I mean, we don't have the time, but we go in and read to you from the record where he says, they were doing that to get me out. This was all part of them trying to get me out. Now, often when we're trying to figure out if something's covered or not, by a pre-existing claim or a set of remedial provisions that the law provides, we ask, is this coming out of the same nucleus of operative fact? And by his own terminology, in multiple places in the record, that's what your client seemed to be saying. So why shouldn't he be bound to what he has said on more than one occasion? Why isn't he, as the other side here, the government says, why shouldn't he be seen as trying to have it both ways? Trying to work at the MSPB side of this all the way through, and then when he doesn't get what he wants, start saying, well, now I got these other things. Your Honor, he's just trying to vindicate his rights. So if he has a right under the Privacy Act, he wants to pursue it. If somebody has taken his records and broken the law and given them to state prosecutors, he's going to pursue it. The fact that he has two claims doesn't mean that there's something improper about both of his claims. Now, to answer your question, I'm glad that I concede that he, in OSC pleadings and pro se statements, he may have said things that sweep broadly that said this is all part of a scheme and vendetta. But at the end of the day, what Mark Hunsnecker did is not a personnel action. And what we're saying is this court really shouldn't, you know, because any kind of tort that happens to you while you're at work, you couldn't sue an agency for that now. And there are, you know, dozens and dozens of FTCA cases where federal employees sue the agency because someone was negligent and they were hurt at work. But under the broad test of CSRA preclusion, they wouldn't be able to sue anyone because the MSPB can't hear those cases. And, you know, if it happened at work, it's going to only, it's going to necessarily fail the but-for test. It's only going to happen as a result of the employment relationship. Let's go back to your reliance on SysTek. I thought SysTek said that an internal investigation could constitute a personnel action either on its own or as part of a broader set of circumstances if it rises to a level of a Isn't that right? I'm quoting. So you're correct. Okay. Yeah. So I accept that you're right. So that may be the case. It's not a significant change in working conditions here. But I would say here the, you know, the investigation, did you say that it results in or that it constitutes? If it rises to the level of a significant change in working conditions. Yeah.  doesn't rise to a level. I mean, Vanden was like one day interviewed. That was the only, he didn't even know about the investigation most of the time it was going on. At a certain point. Did it rise to the level, if it rises to the level of a significant change in working conditions. We've been on this before. I mean, you're saying his working conditions did not change significantly. I'm saying that the investigation did not change his working conditions except to the extent that he had to go and be interviewed. Now, as a result of the investigation. Here's the guy who was so distressed by it that he couldn't go to the interview. He collapses. Here's the guy who when he does go and he is interviewed, is clearly distressed, denies everything that, which the interviewer later says is, says it more politely than this, but says, in effect, you just lied. You lied throughout. You denied everything when the evidence is all against you. I mean, and he then says later, these people who were investigating were not doing it this passionate interview. They were not conducting a fair interview. How is that not, in effect, a hostile environment? Something that rises to a level. I mean, he seems to characterize that. Again, now maybe you're going to say, well, that was him before he had counsel. But that's, he describes it that way. Why should we not hold him to what he said? I mean, I'm not sure he, right. Well, I guess he thought it certainly was hostile for him when he was in that interview. And I would love to have the opportunity to litigate the substance of the finding of this report someday because a lot of courts have been assuming that those allegations are correct, but they're not. But, you know, the, like, doesn't the investigator have an obligation to not be negligent in conducting the investigation? There's other situations where if someone is negligent in what they're doing at work as a federal employee, the person who's harmed has the opportunity to challenge them. But the allegation was not simply negligence. The allegation was this was part of an out-to-get-me scheme. In this case, it's only a negligence allegation. And I'm not sure that there is an intentional allegation against Marissa Williams in the MSPB case. You know, because, again, Marissa Williams wasn't around when Dr. Mayvan was having these disputes with Dr. Gemmon. Dr. Gemmon had the agency hire her. Well, we may be just circling around the same thing unnecessarily. Yeah. But he certainly did characterize, and I think you've acknowledged it already, he certainly did characterize the investigation as being ill-motivated. Yes. Well, it was initiated for bad reasons. We say that in the MSPB. Dr. Gemmon helped initiate the investigation. And that it was carried out not merely in a negligent way, but in a way that was framed to further their desire to get rid of it. I mean, I do think of that. I do think it was in a way. But even if, you know, but again, you have to also look at the, I mean, we think the investigation is not a personal action. Again, what's supposed to be happening here, it is supposed to be a fair third-party thing. So that's why it is, you know, the SysTax says it. You've made the point and you've made it work. Yeah, okay. So both sides. Okay. And I guess just on you. I'll give you 30 more seconds. Okay. So on you, you know, like you claim is literally that the Privacy Act violation caused me to be terminated. And I want to recover from my termination. Or it caused the agency to take some action against him. Dr. Manning's claim is that the Privacy Act violation caused the Commonwealth of Pennsylvania to wrongfully prosecute and convict him. So it's very different. Like the Pennsylvania prosecution cannot be a personnel action, obviously. And I guess, yeah, the last thing I would say is just again. I think that's it. Thanks. Thank you. We gave you both well over 20, 25 minutes, or I think the government gave a little over 20 minutes. Anyway, thank you to both counsel. A very spirited argument. We'll take the matter under advisement and appreciate you being here with us today. Thank you.